UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
MICKEY BAHR, On Behalf of Himself and
Those Similarly Situated Individuals                                      16 CV 1223

                                Plaintiff,

    Against

PNW ENTERPRISES, LLC d/b/a
NEW YORK KIDS CLUB,

                              Defendant.
-----------------------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO CERTIFIY THIS MATTER AS A COLLECTION ACTION MATTER**


                                              THE WEINSTEIN GROUP, P.C.
                                              6800 Jericho Turnpike, Suite 112W
                                              Syosset, New York 11791
                                              Telephone: 516-802-5330
                                              Facsimile: 516-802-5332
                                              ljw@theweinsteingroup.net


TO:    Walker G. Harman, Jr., Esq.
           The Harman Firm, LLP
           1776 Broadway, Suite 2030
           New York, New York 10019

## INTRODUCTION

This lawsuit was brought by a former employee, Mickey Bahr ("Bahr") against the defendant, New York Kids Club ("NYKC") in retaliation for being dismissed. Bahr was hired as an at will employee in 2012[1] initially paid by the hour. Bahr was incrementally elevated within the corporate structure of NYKC and ultimately became a salaried 'Location Manager' responsible for the operations of, initially, the Battery Park City location and thereafter the Tribeca location. NYKC is a young children's enrichment center providing both parent supervised and teacher supervised classes within ten locations throughout New York City.  Each location has one Location Manager, at least one Assistant Location manager, as well as varying amount of instructors and maintenance/cleaning staff.

After receiving poor performance reviews, primarily based upon poor customer service reviews and interactions and a continuing failure to meet sales goals, Bahr was presented with an opportunity to improve through a company generated "plan for action for improvement" ("PFI") that had been specifically drafted to address the deficiencies of Bahr's performance. However, Bahr refused to sign the document claiming he did not agree with it.  As a result, and per the employee handbook, Bahr was dismissed at a performance review meeting one week from receiving the PFI.  Prior to being dismissed, but after receiving the PFI, Bahr called 311 to complain about various alleged health and/or safety violations that he felt were occurring at NYKC locations. However, all alleged violations had already been known to the Department of Health

---

[1] Bahr does not allege there was an agreement to employ him for a definite period, thus his employment is presumed to be at will. *See* <u>Leibowitz v. BankLeumi Trust Co</u>., 152 A.D.2d 169, 174, 548 N.Y.S.2d 513 (2d Dept. 1989).

since as early as 2012 and were already in the process of actively being addressed by Defendant when Bahr made the call.

## **COLLECTIVE ACTION**

Although the preceding discussion establishes that the claims brought forth by Bahr should be dismissed, Defendant would additionally like to address Bahr's contention that this action is suitable for and should warrant a collective action. Contrary to Plaintiff's argument, it is submitted that Bahr's unsupported and conclusory allegations fail to establish a right to seek a collective action.

Courts within the Second Circuit apply a two-step analysis to determine whether an action should be certified as an FLSA collective action." (Valerio v. RNC Indus., LLC, 2016 U.S. Dist. LEXIS 37098, at 7, *citing*, Myers v. Hertz Corp., 624 F.3d 537, 544-45 (2d Cir. 2010) (noting that district courts within this Circuit have "coalesced around a two-step method" for analyzing collective action certification); Amador v. Morgan Stanley & Co., LLC, No. 11 Civ. 4326, 2013 U.S. Dist. LEXIS 19103, 2013 WL 494020, at *2 (S.D.N.Y. Feb. 7, 2013). "First, the court determines whether the proposed class members are 'similarly situated.'" (Valerio, *supra* (*quoting* McGlone v. Contract Callers, Inc., 867 F. Supp. 2d 438, 442 [S.D.N.Y. 2012]); Rubery v. Buth-Na-Bodhaige, Inc., 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2008); Rodolico v. Unisys Corp., 199 F.R.D. 468, 480 (E.D.N.Y. 2001). If the court decides in the affirmative, then the proposed class members must consent in writing to be bound by the result of the suit, or "opt-in." (McGlone, 867 F. Supp. 2d at 442; *See* 29 U.S.C. 216(b))*. "*The second step, which typically occurs after the completion of discovery, requires the court to make factual findings whether the class members

are actually similarly situated." (Valerio, *supra* at 8, *citing*, Rosario v. Valentine Ave. Discount Store, Co., 828 F. Supp. 2d 508, 514 (E.D.N.Y. 2011)).

At this point of the current proceeding, only the first tier of analysis is relevant and appropriate to be addressed— whether the proposed opt-in members are "similarly situated" such that conditional certification should be granted. At this stage, "the evidentiary standard is lenient," (Rubery, *supra* at 336), and plaintiffs need only "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" Myers, 624 F.3d at 555 (*quoting* Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  However, relevant to the issue at hand, "although the burden on the plaintiff at this preliminary stage is modest, 'it is not nonexistent.'" (Boice v. M+W U.S., Inc., No. 14-CV-0505, F. Supp. 3rd, 2015 U.S. Dist. LEXIS 122726, 2015 WL 5316115, at *11 (N.D.N.Y. Sept. 11, 2015)(*quoting* Khan v. Airport Mgmt. Servs., LLC, No. 10-CV-7735, 2011 U.S. Dist. LEXIS 133134, 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011)). As the Second Circuit has explained, "[t]he 'modest factual showing' cannot be satisfied simply by 'unsupported assertions.'" (Myers, *supra* at 624 F.3d at 555 (*quoting* Dybach v. State of Fla. Dep't of Corrections, 942 F.2d 1562, 1567 (11th Cir. 1991)); *see* Morales v. Plantworks, Inc., No. 05 CIV. 2349, 2006 U.S. Dist. LEXIS 4267, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (stating that "conclusory allegations are not enough" to meet the "modest factual showing" at the first stage of collective action certification)).

In the case at bar, Bahr's complaint only includes unsupported allegations and falsehoods; failing to make even a "modest factual showing" that he and potential collective action plaintiffs were victims of a common plan/policy that violated the law (Hoffman, *supra*).

First, as has been discussed, there was no common policy/plan imposed by NYKC that was in violation of the law. Additionally, NYKC did not impose a common policy/practice upon all Location Managers.  Since 2012, fewer than 15 people have been employed by NYKC as Location Managers (such figure includes Bahr and the only other Location Manager to have left the position since 2012).  Second, as a Location Manager, one has the ability to schedule their own week/day to accomplish the tasks a Location Manager is employed to do.  The hours required for all Location Managers was 8:00am to 6:00pm Mondays through Fridays and 8:00am-12:30pm on Fridays. With a daily paid lunch, the hours Location Managers were required to work was 39.5.  Other than hours of operation, each Location Manager was in charge of the entire operation of their location which included the staff, clients, assistant Location Managers, and maintenance team.  Each Location Manager handled different responsibilities that were dictated by the circumstances/events at location. And, as such, each Location Manager had the freedom and trust to handle the responsibilities of their location within the hours required by NYKC. Lastly, Location Managers did not have the same salary, each is negotiated separately based upon experience. Bahr only alleges that Location Managers had the same title and general responsibilities, utterly failing to show that the Location Managers were/are victims of a plan/policy that violated the law.

Furthermore, the allegations that Bahr does include in his complaint regarding a collective action are exaggerations, clearly fabricated for the sole purpose of trying to meet the qualifications of the irrelevant and inapplicable standard of one seeking class action status versus collective action status. "FLSA collective actions, unlike class actions brought under Rule 23, need not satisfy the standards of numerosity, typicality, commonality, or representativeness." (Mendoza v. Ashiya Sushi 5, Inc., No. 12 CIV. 8629 (KPF), 2013 U.S. Dist. LEXIS 132777, 2013 WL 5211839, at *2 (S.D.N.Y. Sept. 16, 2013) (*quoting* Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y.

2005)); *see also* Fed. R. Civ. P. 23(a). Therefore, the requirements for certifying a collective action pursuant to FLSA § 216(b) are less onerous than the requirements pursuant to Fed. R. Civ. P. 23 for certifying a class action. (*See*, Costello v. Kohl's Illinois, Inc., No. 1:13-CV-1359 (GHW), 2014 U.S. Dist. LEXIS 124376, 2014 WL 4377931, at *2 (S.D.N.Y. Sept. 4, 2014) ("Unlike class actions, FLSA collective actions need not satisfy the requirements of Fed. R. Civ. P. 23, . . .") (*citing* Mendoza, 2013 U.S. Dist. LEXIS 132777, 2013 WL 5211839, at *2). However, in trying to argue that a collective action is warranted, Bahr wrongly tries to manipulate the facts of the case to fit into the standard for a class action. For example, Bahr maintains (in an attempt to establish numerosity) that "the putative class is so numerous that joinder . . . is impracticable" (Complaint at 20). Yet, since September 2012, NYKC has employed less than 15 people to the position of Location Manager. Then Bahr reassures the court (in an attempt to establish representativeness) that he "has retained attorneys that are experienced and competent in the fields of employment law and collective action litigation," yet such qualifications are weighed by justices determining a class action suit and are not required to establish a collective action, presumably which Bahr's attorneys should be aware since they are purportedly experienced in collective action litigation. Further, Bahr asserts (in an attempt to show typicality) that he "has no interest that is contrary to or in conflict with those of the [potential] Collective Action Members," however, Bahr's termination was based, in part, on poor peer reviews by other Location Managers which certainly establishes conflict as well as contrasting interests with other potential collective action members. Bahr then repeats the assertion that "joinder of all members is impracticable" a therefore asserts a "collective action is superior to other available methods [of] . . . adjudication." (Complaint at 22). However, as has been mentioned, we are dealing with a pool of less than 15 members all but 2 of which are still employed at NYKC and can easily be reached/noticed. Lastly, Bahr claims there to be at least

6 common questions of law and fact (in an attempt to establish commonality) that he and the potential collective class members share that "predominate over questions that may affect only individual members . . ." (Complaint at 23). However, the 6 "[q]uestions of law and fact" are not common issues had between Bahr and potential plaintiffs that would warrant judicial efficiency in having them heard together in one action. Such 'question' are simply an outline of the requirements one needs to establish in order to bring a collective action for an alleged overtime compensation FLSA claim.

It is understood by Defendant that Bahr need not allege the threshold requirements for a class action when seeking a collective action. However, by using the incorrect standard, and then contorting purported facts to meet the incorrect standard highlights how untrue and unsubstantiated such claims are.

## **CONCLUSION**

In light of the fact that Bahr, an employee at will, was terminated for cause based upon customer service complaints, poor sales records, as well as refusing to sign off on the "plan for improvement," his overbroad assertions that he was fired as a result of retaliation show that his claims, and indeed this entire action, are brought in bad faith, without support, and are in fact a clear retaliation against NYKC for properly terminating him.  As a result, Bahr has unnecessarily burdened NYKC with false and misleading accusations and claims that should not be allowed to continue.  It is respectfully submitted that Bahr's complaint be dismissed with prejudice.


Dated: Syosset, New York
September 12, 2016

                              Respectfully submitted,

                              THE WEINSTEIN GROUP, P.C.

                              By:
                              LLOYD J. WEINSTEIN, Esq. (LW2395)
                              (Rule 130-1.1a) (NYS Tech Law §304(2))
                              6800 Jericho Turnpike, Suite 112W
                              Syosset, New York 11791
                              Telephone: 516-802-5330
                              Facsimile: 516-802-5332
                              ljw@theweinsteingroup.net


TO:    Walker G. Harman, Jr., Esq.
           The Harman Firm, LLP
           1776 Broadway, Suite 2030
           New York, New York 10019